UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARIO ORTEGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-1576-DDN |
| | ) | |
| CITY OF ST. LOUIS, etc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT

Plaintiff, by leave, has filed a third amended complaint [ECF 104], asserting multiple claims against defendants under 42 U.S.C. §1983 and state law. The Court declined to allow plaintiff to implead some 50 supervisory police officers on a novel theory of group liability, but granted leave to file the third amended complaint insofar as it included allegations of misconduct by defendants O'Toole, Leyshock, Howard, Boyher, Sachs, Rossomanno, Karnowski, Kiphart, Walsh, Burle and Thacker. ECF 104, ¶¶10-20. The individual defendants named in ECF 104, ¶¶10-20 now seek dismissal of the third amended complaint. Defendant City of St. Louis also seeks dismissal. Because the Court has already devoted considerable attention to the case, defendants will attempt not to be unduly prolix in this memorandum.

Insofar as pertinent to this motion, Plaintiff alleges that defendants arrested him without probable cause (count I), infringed his First Amendment rights of assembly and freedom to observe and record police activity by arresting and mistreating him (count II), conspired to deprive Plaintiff of his constitutional rights (count III), and subjected Plaintiff to excessive force in the course of arresting him (count XII). Plaintiff has added a claim of liability on the basis of failure of all of the individual defendants (other than defendant Deeken) to intervene to prevent

Plaintiff's illegal arrest or subjection to excessive force (count XIII).  In addition, Plaintiff alleges state law claims of assault (count V), false arrest (count VI), abuse of process (count VII), malicious prosecution (count VIII), intentional and negligent infliction of emotional distress (counts IX and X), a novel theory of vicarious liability against defendants O'Toole and Deeken, based on the City Charter (count XI), and a claim of battery (count XIV).

Plaintiff alleges specific misconduct by defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno and Jemerson in their supervisory roles.  ECF 104, ¶¶ 52, 53, 108, 134.  Plaintiff also alleges specific misconduct involving direct contact between him and defendants Kiphart, Walsh, Burle and Thacker.  ¶¶20, 150, 152-155, 159, 166.  None of the other defendants is alleged to have had any direct contact with Plaintiff, nor is it alleged that any of the specific misconduct of the officers who did make contact with Plaintiff was of sufficient duration or within proximity to allow any other individual defendant to act to prevent any mistreatment of Plaintiff.  *Id.,* see also ¶¶212-213.  The gist of Plaintiff's allegations against the other defendants is that they all knew there was no probable cause to arrest Plaintiff and that excessive force was used on Plaintiff without a reasonable basis, yet they participated in the mass arrest that captured Plaintiff.  E.g., ¶¶10-12-18, 130.

Plaintiff admits that there had been violence earlier that night in connection with the group that was to be encircled, and acknowledges that orders to disperse had been given repeatedly.  ¶¶41, 47-48, 122, 124.  He alleges that he went to the area of Tucker and Washington to "observe" protest activity, ¶¶133-35.  He alleges that members of the group that he observed were sporting masks and goggles, including his companion (another plaintiff, Dillan Newbold).  ¶¶89-91, 145.  He acknowledges that a crowd was milling about in the intersection of

Tucker and Washington, at least partially blocking the intersection. ¶¶124-125, 147; see also ECF 37-7 (Ex. G); see also ECF 37-5 (Ex. E), pp. 12-13, 24, 71.

Although the Plaintiff alleges a number of prior incidents in which St. Louis police utilized pepper spray in mass protest situations, ¶¶28, 31, 37, 38, there is no allegation in the complaint of any previous conduct of a mass arrest by City police. Also, Plaintiff alleges no medical expenses, lost wages, or any medical treatment of any kind for his alleged injuries, although he does allege that he suffered "lasting damage" to his wrist, and "medically diagnosable" emotional distress. ¶¶160, 252.

1. **The third amended complaint does not pass muster under the *Twombly-Ashcroft* standard, particularly when the exhibits filed with the second amended complaint are considered.**

As noted above, Plaintiff alleges specific actions by several named defendants, but the supervisory defendants named in paragraphs 10, 11-18 of the third amended complaint are the subject of threadbare and conclusory allegations which wholly fail to allege any personal involvement of those defendants in regard to Plaintiff individually. Such pleading does not meet the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This is particularly so if the Court chooses to consider the exhibits that Plaintiff incorporated in the earlier complaints, but now has elided. Ordinarily, exhibits which have been abandoned are not within the purview of a court on a motion to dismiss, but that assumes that the plaintiff rejected or disavowed those exhibits. See, e.g., *Hoefling v. City of Miami*, 811 F.3d 1271, 1277-78 (11th Cir. 2016). Here, however, Plaintiff continues to rely on the decision and record in the *Ahmad* case. ¶¶119ff. Of course, the record in *Ahmad* is a public record, of which the Court can take judicial notice. F.R.Ev. 201.

3

Defendants submit that the Court can and should consider the exhibits drawn from *Ahmad* heretofore inserted in the record, ECF 37-4 to 37-7, in evaluating the plausibility of Plaintiff's latest amended complaint. These materials are referenced in the complaint and involve matters central to Plaintiff's claims. See *Ryan v. Ryan,* 889 F.3d 499, 505 (8th Cir. 2018); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). Consideration of these exhibits is especially appropriate in the context of the issue of qualified immunity, which is to be resolved at the earliest possible stage of proceedings. E.g., *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

At a minimum, the Plaintiff's allegations against the defendants identified in paragraphs 10 and 11-17 of the third amended complaint are exactly the sort of generic, implausible and conclusory allegations that wholly fail to state a claim of personal involvement of those defendants in any constitutional injury of *this Plaintiff*. *Doran v. Eckold,* 409 F.3d 958 (8th Cir. 2005)(*en banc*); see also *Ashcroft v. Iqbal,* 556 U.S. at 677; *Saucier v. Katz,* 533 U.S. 194, 212 (2001)(Ginsburg, J., concurring); *Calgaro v. St. Louis City (MN),* 919 F.3d 1054 (8th Cir. 2019).

**2.    The third amended complaint's §1983 claims based on illegal retaliatory arrest and application of excessive force (counts I, II, XII and XIII) should be dismissed, because the individual defendants are qualifiedly immune to those claims, in that Plaintiff does not state a plausible claim that each and every defendant violated Plaintiff's clearly established constitutional rights.**

Defendants respectfully urge the Court to follow *Burbridge v. City of St. Louis,* 430 F.Supp.3d 595 (E.D.Mo. 2019).  In that case, Judge Clark held that the individual defendants--including defendants Leyshock, Rossomanno, Jemerson and others named in this case--had at least arguable probable cause to arrest persons who were part of the group assembled at Tucker and Washington on the night of September 17, 2017.  No doubt it will be argued that Judge Clark acted on the basis of a different record, and that Judge Sippel has declined to accord Judge Clark's opinion any weight, *Baude v. City of St. Louis*, No. 4:18-CV-1564-RWS, 2020 U.S. Dist. LEXIS 139770 (E.D. Mo. Aug. 4, 2020), but the undisputed facts on which Judge Clark relied are reflected in the record before this Court and on the face of the third amended complaint.

As noted above, liability under 42 U.S.C. §1983 is personal and not vicarious, and so defendants are liable under the statute only for their individual acts.   See also *Doe v. Cassel,* 403 F.3d 986 (8th Cir. 2005).*,*  In assessing the individual acts of the defendants for qualified immunity, the established analysis is, first, did the conduct of the individual defendant at issue violate a constitutional right, and, second, was that right clearly established at the time of the alleged conduct?  E.g., *Pearson v. Callahan,* 555 U.S. 223 (2009).  In answering the second question, it is critical that the constitutional right not be defined at a high level of generality.  E.g., *Mullenix v. Luna,* 136 S.Ct. 305 (2015).  "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *District of Columbia v. Wesby,* 138 S.Ct. 577, 590 (2018).

*Unlawful arrest.*   With regard to the allegedly unlawful arrest, the amended complaint as a whole shows that, in fact, the police had probable cause or arguable probable cause to arrest

5

Plaintiff.[1]  At the time defendants Leyshock and Sachs determined that a mass arrest should occur if dispersal was not achieved, the amended complaint shows that the following facts were known or had been reliably reported to them:  a large crowd was milling about the intersection of Tucker and Washington, in fact impeding traffic; that crowd included persons wearing masks and goggles, suggestive of intentions to confront and resist police; that crowd included persons who had been involved in disorderly activity downtown in the past several hours; that crowd had disregarded repeated orders to disperse; at least some members of that crowd had assaulted or threatened officers earlier; and that similar crowds had resorted to violence on the two preceding nights.  See 3rd amended complaint ¶¶42, 96-97, 147; ECF 33-4, p. 261, 296-97; 137-5 (Ex. E, pp. 6-7, 126, 158ff., 183; 137-7 (Ex. G); compare 430 F.Supp.3d 610-12.

The determination of probable cause is an objective one:  whether the facts and circumstances known to an officer, or collectively known to the police, at the time would warrant the officer in believing that an offense had been committed and that the arrestee had committed it?  E.g., *District of Columbia v. Wesby,* supra.  The subjective belief of an officer as to the offense which has been committed is immaterial, as is any subjective animus of the officer. E.g., *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019); *Devenpeck v. Alford,* 543 U.S. 146 (2004). Moreover, in situations of civil disorder, if there are reasonable grounds to believe that a group has been acting and will act as a unit, it is reasonable to treat the group as a unit in assessing probable cause to arrest the group's members. *Bernini v. City of St. Paul,* 665 F.3d 997, 1003-04 (8th Cir. 2012); see also *Carr v. Dist. of Columbia,* 573 F.3d 401, 408 (D.C.Cir. 2009).   Above all, the determination of probable cause is made from the standpoint of the officer in the field, based

---

[1] If the officers had probable cause or arguable probable cause, the "retaliatory arrest" claim of count II fails along with the illegal arrest claim of count I.  *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019).

only on the facts known or knowable by the officer, and not in an exercise of judicial hindsight. E.g., *White v. Pauly,* 137 S.Ct. 548, 550 (2017); *Herring v. United States,* 555 U.S. 135 (2009).

In the case at bar, defendants Leyshock, Howard and Sachs had ample probable cause or arguable probable cause to believe that the group milling about Tucker and Washington was a unit, and that the unit had engaged in violence and vandalism previously. It was reasonable to infer that, left undisturbed, this crowd would erupt in further disorder. Although the crowd was not exhibiting violent behavior as it milled about Tucker and Washington, probable cause to arrest does not become stale. E.g., *United States v. Watson,* 423 U.S. 411 (1976). It took time to assemble the necessary force to accomplish the mass arrest. Under the circumstances, arrest of the members of the unit was entirely proper. This is so with regard to Plaintiff, who admits that he was present intentionally to "observe" a protest crowd. ¶¶133ff. Under the circumstances, Leyshock, Howard and Sachs could reasonably have believed that everyone milling about the intersection was part of the unit, particularly since those present had apparently disregarded multiple dispersal orders.[2]

At a minimum, defendants had arguable probable cause to arrest Plaintiff. Even if the officers were mistaken about the nature of the crowd and Plaintiff's role in it, that mistake was reasonable. Given all of the circumstances, the officers could reasonably believe that the crowd was acting as a unit and that its members accordingly could be treated as a unit. In addition, the officers could reasonably believe that the members of the crowd had violated a variety of laws relating to impeding traffic, unlawful assembly, and peace disturbance generally, e.g.,

---

[2] That Plaintiff did not hear warnings does not mean warnings were not given. E.g.,*Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017). However, Plaintiff alleges that warnings in fact were given, as noted above.

7

Mo.Rev.Stat. §§574.010, 574.040, 574.060. Compare *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017) with *Bernini v. City of St. Paul,* 665 F.3d 997 (8th Cir. 2012); see also *Burbridge,* supra.

In this case, the factors impelling Lt.Col. Leyshock and Lt. Sachs to decide to arrest the group including Plaintiff have been delineated above. Even if defendants Leyshock and Sachs were mistaken in believing that the group at Tucker and Washington was acting as a unit and presented a danger to the public, that mistake, in light of all the circumstances, was reasonable, because they reasonably believed that it was important to control a chaotic and potentially combative scene and prevent escalation of disorder. See *Bernini*, 665 F.3d at 1004; see also *Carr v. District of Columbia*, 587 F.3d 401 (D.C.Cir. 2009); *Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, 120 (D.C.Cir. 1977)("It is the tenor of the demonstration as a whole that determines whether the police may intervene; and if it is substantially infected with violence or obstruction the police may act to control it as a unit.") Moreover, if there is doubt as to the conduct of a group as a whole, the group's failure to obey dispersal orders is a factor that supports treating the group as a unit. *Washington Mobilization Committee*, 566 F.2d at 120; see also *Kelsey v. Ernst,* 933 F.3d 975 (8th Cir. 2019)(*en banc*); *Rudley v. Little Rock P.D.,* 935 F.3d 651 (8th Cir. 2019).

The generic, formulaic allegations against the "supervisory officers" in general are not sufficient to preclude qualified immunity for the defendants named in ¶¶12-17, or for Acting Commissioner O'Toole, ¶10. Plaintiff himself ascribes the plan to execute a mass arrest to defendants Leyshock, Sachs and Howard--although Howard apparently is liable simply because he "relayed information" to Leyshock. ¶¶12-14, 45-46, 52. The other defendants (including Boyher, Jemerson, Karnowski and Rossomanno) acted on the orders of their superiors. ¶¶12-13, 55, 99; see also ECF 37-5, pp. 29-30. Their reliance on the directives of their superiors was

8

entirely reasonable. See *Ehlers v. City of Rapid City,* 847 F.3d 1002, 1010 (8th Cir. 2017). Nothing in the amended complaint shows that any other defendant had superior means of knowledge or any reason to question the judgment of Leyshock and Sachs, who had been involved in policing disorders during that entire weekend. In short, defendants are qualifiedly immune to liability for the mass arrest. See *Bell v. Neukirch,* 979 F.3d 594, 609-10 (8th Cir. 2020); see also *Garcia v. Doe,* 779 F.3d 84 (2d Cir. 2014).

Qualified immunity is particularly appropriate with regard to Plaintiff's fanciful claim in count XII that the mass arrest--"kettling" in Plaintiff's patois--is an application of excessive force in and of itself. ¶285. Clearly, there is no settled law that mass arrests are *per se* violations of the Fourth Amendment. While it perhaps was not a model operation, there is no basis to conclude that defendants were objectively unreasonable in ordering or executing the mass arrest as such. Mass arrests have been approved in similar circumstances. *Bernini,* supra; *Garcia v. Doe,* supra; *Carr v. Dist. of Columbia,* 587 F.3d 401 (D.C.Cir. 2009). Certainly it cannot be said that it was "clearly established" in 2017 that officers could not conduct a mass arrest of a crowd for violations of laws relating to traffic control and unlawful assembly.

*Excessive force.* Defendants are immune from liability for the use of excessive force (if any), by individual officers for three reasons: first, the amended complaint fails to show that the supervisory defendants (O'Toole, Leyshock, Howard, Sachs, Boyher, Karnowski, Jemerson, Rossomanno) knew that line officers were using any excessive force; second, insofar as the supervisors observed the use of any force, it was reasonable under the circumstances for them to believe that officers were using only necessary force to accomplish the arrest of Plaintiff; and, third, it was and is not clearly established that the use of pepper spray, tight handcuffing, arm twisting, or brief dragging of an arrestee constitute anything more than *de minimis* use of force,

9

which is not be sufficient to put any officer on notice that Plaintiff were being subject to a Fourth Amendment violation.[3]

Nothing in the record shows that the supervisory defendants (other than defendant Kiphart) personally participated in any use of force against Plaintiff. Defendant Rossomanno is alleged to have been closely supervising the arrests and likely was aware that pepper spray was being used. However, nothing in the record shows, or allows a reasonable inference, that Sgt. Rossomanno or any other supervisory defendant (again excepting Kiphart) knew of any spraying of Plaintiff in time to have intervened. Plaintiff's allegations that *all* supervisory officers knew that excessive force was being used generally at Tucker and Washington do not suffice to impose such liability on the officers. Plaintiff's blunderbuss allegations are simply an effort to evade the necessity of pleading specific acts by specific defendants *against the Plaintiff personally.* Binding precedent precludes such artifice. Supervisors who did not make contact with Plaintiff, or cannot be shown to have been within close proximity when Plaintiff was allegedly pepper sprayed, cannot be liable for the alleged use of force against Plaintiff. E.g., *Wilson v. Northcutt,* 441 F.3d 586 (8th Cir. 2006).

Even if the defendant supervisors saw the spraying or handcuffing of Plaintiff, they are nonetheless entitled to qualified immunity because, at the time of the mass arrest (and still) it was not clearly established that pepper spray, handcuffing, or arm twisting or dragging were, in and of themselves, necessarily anything other than *de minimis* uses of force--especially where

---

[3] It appears that Plaintiff's allegations regarding denial of medical care while in custody, ¶¶106ff., are merely surplusage, as there is nothing in the third amended complaint that asserts such denial as a separate claim. Defendants had no notice that it was clearly established in September 2017 that a failure to help arrestees wash off pepper spray or loosen handcuffs was deliberate indifference to serious medical needs. See *A.H. v. St. Louis County,* 891 F.3d 721 (8th Cir. 2018). Further, Plaintiff was not in any individual defendant's custody after he was placed in a transport van. ¶¶161ff.

such force caused no more than *de minimis* injury; and so defendants could reasonably believe that such force did not amount to a constitutional violation. It is well settled that not every slap or kick or other similar application of non-lethal force is a Fourth Amendment violation. See, e.g., *Graham v. Connor*, 490 U.S. 386 (1989). In *White v. Jackson*, 865 F.3d at 1080, the Eighth Circuit held that placing a knee on an arrestee's back in the process of the arrest was not excessive force, notwithstanding lack of resistance. In *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003), the Court held that handcuffing so tightly as to cause bleeding, without medical evidence or any other evidence of long-term injury, did not amount to a Fourth Amendment violation. Compare *Peterson v. Kopp,* 754 F.3d 594 (8th Cir. 2014) with *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). Significantly, *Peterson* held that pepper spraying an arrestee in the face, causing pain and discomfort lasting several days and some "peeling" under the eyes, was a *de minimis* use of force, and the officer using the force was entitled to qualified immunity. 754 F.3d at 601.

    There simply is no authority to support Plaintiff's notion that *every* supervisory officer on the scene can be liable for the arrest of or injuries to Plaintiff on a "failure to intervene" theory, even though such officers never personally had any contact with Plaintiff. Existing precedent in mass arrest situations holds the opposite. *White v. Jackson,* supra; *Bernini,* supra; *Carr v. Dist. of Columbia,* supra; *Garcia v. Doe,* supra; see also *Dist. of Columbia v. Wesby,* 138 S.Ct. at 590 ("precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply"); *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008)(plaintiff must show "affirmative link" between defendant and plaintiff's alleged injury).

    In this case, under all the circumstances as derived from the amended complaint as a whole--and especially in light of the exhibits to the second amended complaint--it is clear that no

11

one could believe that handcuffing arrestees, even tightly, would amount to more than *de minimis* force. In addition, defendants could reasonably have believed that the use of pepper spray by officers in the course of arresting Plaintiff was either arguably reasonable--as it was impossible to tell from a distance if anyone in the group was resisting or struggling against handcuffing or not--or was not more than *de minimis* force, inflicting no more than *de minimis* injury, and so was not amounting to unreasonable force. In other words, especially in the unusual context of a mass arrest, a reasonable police officer could have believed that as long as the force used was *de minimis* and did not cause more than *de minimis* injury to an arrestee, the use of force was not unconstitutional. See *Shelton v. Stevens*, 964 F.3d 747 (8th Cir. 2020); *Blazek v. City of Iowa City,* 761 F.3d 920 (8th Cir. 2014) *A fortiori,* in the context of a mass arrest, defendant supervisors could also reasonably have believed that as long as the pepper spray and handcuffing was *de minimis* force that did not obviously cause more than *de minimis* injury, the force being used by line officers was not unconstitutional. Thus, the handcuffing, arm twisting, dragging, or other force used against Plaintiff are within the realm of arguably *de minimis* force, and so those allegations do not defeat qualified immunity.[4]

In sum, the claims in counts I, II, XII and XIII against defendants should be dismissed entirely, on the basis of qualified immunity.

### 3. The conspiracy claim (count III) is barred by the intracorporate conspiracy doctrine or by qualified immunity.

---

[4] Plaintiff alleges that defendants Kiphart and Burle sprayed Plaintiff. ¶¶150, 152. Defendant Thacker allegedly kicked him. ¶154. Defendant Walsh allegedly tightened the handcuffs when Plaintiff complained of pain. ¶159. Obviously, these are allegations of direct personal involvement of these defendants with Plaintiff's arrest. However, the conduct alleged is not so plainly violative of constitutional rights that these defendants are not entitled to qualified immunity--especially with regard to Officer Walsh. *Shelton v. Stevens,* supra.

Defendants assume that the Court will adhere to its practice of refusing to consider the intracorporate conspiracy doctrine on a motion to dismiss. *Torres v. City of St. Louis*, No. 4: 19 CV 1525 DDN, 2021 U.S. Dist. LEXIS 57001 (E.D. Mo. Mar. 25, 2021). Defendants, of course, adhere to their view that the doctrine is applicable, and that the practice in the Eastern District of refusing to apply it at the pleading stage is contrary to Supreme Court precedent, including *Ashcroft v. Iqbal,* supra. In any event, as Judge Sippel recognized in *Baude v. City of St. Louis,* No. 4:18-CV-1564-RWS, 2020 U.S. Dist. LEXIS 139770 (E.D. Mo. 2020), the unsettled state of the law regarding intracorporate conspiracies and §1983 compels recognition that defendant police officers are qualifiedly immune to the claim of conspiracy in this case. Judge Sippel's opinion canvasses the authorities fully, and defendants will not trouble the Court with further argument on the point. Count III must be dismissed as to all individual defendants.

**4.      The state law claims are barred by official immunity.**

As to the individual defendants, all of the state law claims on their face are either insufficient or barred by official immunity, notwithstanding Plaintiff's boilerplate allegations of malice or bad faith, essentially for the same reasons as advanced in support of qualified immunity above. *State ex rel. Alsup v. Kanatzar,* 588 S.W.3d 187 (Mo.banc 2019); *Edwards v. McNeill,* 894 S.W.2d 678 (Mo.App.W.D. 1995). In addition, the claims of abuse of process and malicious prosecution are insufficient as a matter of state law. Although Plaintiff alleges issuance of a summons, he was never required to appear in response to the summons (which is not alleged to have issued from a court), there is no allegation that, in fact, any defendant initiated a charge against either plaintiff (see ¶125), there is no allegation of any improper or "perverted" use of process, and malicious prosecution actions are not favored. See *Baker v. St. Joe Minerals Corp.,* 744 S.W.2d 887 (Mo.App.E.D. 1988); *Koury v. Straight,* 948 S.W.2d 639

13

(Mo.App.W.D. 1997); *Hunter v. Karchmer,* 285 S.W.2d 918 (Mo.App. Spr. 1955).  Finally, the claims of emotional distress are simply repackaged claims of assault or battery, and will not lie. *State ex rel. Halsey v. Phillips,* 576 S.W.3d 177 (Mo.banc 2019).

Here, again, defendants call the Court's attention to Judge Clark's opinion in *Burbridge,* supra, 430 F.Supp.3d 615ff.  Identical claims of false imprisonment or arrest and malicious prosecution were lodged against the defendants in *Burbridge,* but, as Judge Clark demonstrates, they do not hold water.  As in *Burbridge,* the Plaintiff in the case at bar at most alleges a colorable claim of battery against the defendants who actually applied force to him--although defendants contend that official immunity nonetheless applies to all of the defendants here.

Defendants also call the Court's attention to *Street v. O'Toole*, No. 4:19 CV 2590 CDP, 2021 U.S. Dist. LEXIS 31856 (E.D. Mo. Feb. 22, 2021), in which Judge Perry dismissed similar the state law claims for abuse of process and malicious prosecution.

**5.    Even if some claims survive the motion to dismiss, the Court should decline to exercise supplemental jurisdiction over plaintiff's novel City Charter theory.**

In count XI of the third amended complaint, Plaintiff invokes a provision of the St. Louis City Charter to seek to impose vicarious liability on two new defendants, then acting police commissioner O'Toole and acting director of public safety Deeken. The Charter provision (of which this Court can take judicial notice, Fed.R.Ev. 201) provides in pertinent part: "Each head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself."  For the reasons stated by Judge Perry in Street v. O'Toole, supra, *40 - *42, this Court should not exercise supplemental jurisdiction over this novel state claim.

14

**6.     Count IV asserting a *Monell* claim against defendant City of St. Louis should be dismissed for the reasons stated by Judge Clark in *Burbridge*.**

Plaintiff adroitly attempts to plead a claim (count IV) of municipal liability against defendant City on the basis of a mass arrest that, on the face of the complaint, has no counterpart in St. Louis history.  There simply is no basis to infer an actionable "custom" from the unusual events of September 17, 2017, in the City of St. Louis.  Again, defendants advert to Judge Clark's well-reasoned opinion in *Burbridge v. City of St. Louis,* supra.  Plaintiff, of course, will insist that *Burbridge* was decided on a different record, but is only too happy to insist that the findings in *Ahmad,* which were provisional preliminary injunction findings, are relevant.  Both judges acted on claims involving the same incident, but Judge Clark's opinion is the only one that is an opinion on the merits.  Defendants urge the Court to follow Judge Clark's opinion.

### Conclusion

For the foregoing reasons, the third amended complaint should be dismissed with prejudice (or without prejudice as to count XI).

> Respectfully submitted,
> MICHAEL A. GARVIN
> CITY COUNSELOR
>     /s/ Robert H. Dierker 23671(MO)
>     dierkerr@stlouis-mo.gov
>     Brandon Laird 65564(MO)
>     Abby Duncan 67766(MO)
>     Associate City Counselors
>     Adriano Martinez 69214(MO)
>     Catherine A. Dierker 70025(MO)
>     Assistant City Counselors
>     1200 Market St.
>     City Hall, Rm 314
>     St. Louis, MO 63103
>     314-622-3361
>     Fax 314-622-4956
>
> ATTORNEYS FOR DEFENDANTS