UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARIO ORTEGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:18-cv-1576-DDN |
| ) | |
| CITY OF ST. LOUIS, etc., et al., ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Plaintiff's memorandum in opposition to defendants' motion to dismiss the third amended complaint [ECF 106, 108-1] necessitates a brief response.

**1.    The exhibits to the earlier complaints can and should be considered by the Court on the motion to dismiss, given the issue of qualified immunity.**

Plaintiff argues that the exhibits that he helpfully injected into the record through the earlier versions of his complaint should be disregarded.  This is incorrect for two reasons:  first, *Jones v. City of Cincinnati,* 521 F.3d 555 (6th Cir. 2008), and similar cases are obsolete in light of the pleading standard enunciated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Because the issue of qualified immunity is to be resolved at the earliest possible stage of §1983 litigation, see, e.g*., Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020)(*en banc*), cert. denied, 141 S.Ct. 1071 (2021), it behooves the Court to examine the entire record at this stage, and not just the conclusory allegations of the third amended complaint, in determining if plaintiff has pleaded a plausible claim against all defendants..

**2.     The probable cause or arguable probable cause issue cannot be resolved by considering only the apparent conduct of plaintiff and other members of the crowd during the time immediately preceding the mass arrest; rather, the totality of the circumstances, including the crowd's behavior earlier in the evening and the eruption of violence from similar crowds on preceding nights, must be considered.**

Plaintiff insists that the issue of probable cause or arguable probable cause turns on the video and other evidence of crowd behavior at and immediately before the police closed in.  ECF 108-1, pp. 10-11.  That is contrary to the law.  Lt. Col. Leyshock and Lt. Sachs could and did take into account the behavior of the crowd earlier in the evening, reports of threats against police at Locust and Tucker, the failure of the crowd to disperse despite repeated orders earlier, and the continued presence of masked and goggled persons in the crowd.

The other defendants likewise could consider all that they had observed during the evening of September 17, as well as the reasonable likelihood that Lt. Col. Leyshock and Lt. Sachs were in possession of additional information warranting the mass arrest.  Finally, just as plaintiff argues that all defendants could and did observe the arrest and macing of the crowd, so, too, all defendants could and did observe the failure to disperse after repeated commands.

**3.     The weight of authority counsels that this Court apply qualified immunity to the intracorporate conspiracy claim of plaintiff.**

While this Court has refused to consider the intracorporate conspiracy doctrine in deciding a motion to dismiss--a refusal that defendants respectfully argue is contrary to F.R.Civ.P. 12(b)(6)--there is no principled reason not to consider the application of qualified immunity against plaintiff's conspiracy claim.  The parties have fully addressed this facet of the intracorporate conspiracy issue, and defendants will content themselves with observing that

Chief Judge Sippel has reiterated his holding that qualified immunity defeats a §1983 conspiracy claim. *Franklin v. Saint Louis Cty.*, No. 4:20 CV 1134 RWS, 2021 U.S. Dist. LEXIS 53761 (E.D. Mo. Mar. 22, 2021).

**4.     Plaintiff's municipal liability theories against defendant City are untenable in light of the opinion of the Court of Appeals in *Ahmad v. City of St. Louis*.**

Plaintiff relies heavily on the district court's findings on a motion for preliminary injunction in *Ahmad v. City of St. Louis*. However, the rationale of the district court concerning municipal liability in *Ahmad* has been seriously undermined by the opinion of the Court of Appeals on appeal from the district court's orders refusing to dissolve the preliminary injunction and certifying a class. *Ahmad v. City of St. Louis,* 2021 U.S. App. LEXIS 12409, 2021 WL 1619496 (8th Cir. Apr. 27, 2021). While affirming denial of a motion to dissolve the preliminary injunction but vacating the class certification order, the Court of Appeals declared:

> Plaintiffs seek permanent injunctive relief against the City based on its alleged custom and practice and its failure to train and supervise police officers. Regarding the custom and practice claim, plaintiffs do not allege that the municipal ordinances being enforced during the September 2017 protests are constitutionally invalid. But a "showing at trial of a relatively few instances of violations by individual police officers, without any showing of a deliberate policy on behalf of [the City, would] not provide a basis for equitable relief." . . . Rather, "where the claim is that municipal action lawful on its face caused an employee to inflict constitutional injury, 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.'" *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017), quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). To prevail on this claim, plaintiffs "must show that [their] alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct, that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015); see *Szabla v. City of Brooklyn Park, Mn*. 486 F.3d 385, 389-90 (8th Cir. 2007) (*en banc*); *Thomas v. Cty. of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1992) ("plaintiffs' eventual burden in obtaining a permanent injunction against a state law enforcement agency is to establish more than repeated incidents of misconduct").
>
> Plaintiffs' burden in proving their municipal failure to train and supervise claim is no less rigorous. "'Section 1983 liability cannot attach to a supervisor merely because a

subordinate violated someone's constitutional rights.' . . . [T]o maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury.'" *Johnson v. City of Ferguson, Mo*., 926 F.3d 504, 506 (8th Cir. 2019) (*en banc*); see *City of Canton v. Harris*, 489 U.S. 378, 389-92, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Given these rigorous § 1983 burdens of proof, the evidence at the preliminary injunction hearing relating to the events of September 2017, while relevant and sufficient to persuade the court to grant a preliminary injunction *pendente lite*, *will not be sufficient to warrant permanent injunctive relief imposing the same levels of indefinite federal court control over the City's law enforcement responsibilities*. As Judge Posner recently reminded Seventh Circuit district judges, "[t]he era of micromanagement of government functions by the federal courts is over." *Chicago United Ind*., 445 F.3d at 947. [Emphasis added.]

To be sure, plaintiff here seeks damages, but his municipal liability theory is lifted almost bodily from the district court's opinion in *Ahmad.* 3rd am. complaint [ECF 100-1, ¶¶27, 38, 203c-203e; ECF 37, at ¶125.] It is evident from the opinion of the Court of Appeals that the sporadic, unconnected incidents of use of pepper spray by City police in the past is insufficient to fasten municipal liability under §1983 on the City, and that Judge Clark's analysis of municipal liability in *Burbridge v. City of St. Louis,* 430 F.Supp.3d 595 (E.D.Mo. 2019) is correct.

More importantly, plaintiff alleges no prior incidents of use of mace or tight handcuffing (or "zip-tying") in mass arrest situations sufficient to give rise to an inference of a persistent, widespread practice having the force of law.  The third amended complaint is particularly deficient in regard to the handcuffing claim.  Plaintiff's allegations of some sort of "custom" or practice of unconstitutionally painful handcuffing fail to allege *any* prior pattern of incidents of unconstitutionally painful handcuffing--mass arrest or no.  As a matter of law, painful handcuffing in connection with an arrest simply is not an actionable constitutional violation. *Robinson v. Hawkins,* 937 F.3d 1128 (8th Cir. 2019); cf. *Szabla v. City of Brooklyn Park,* 486 F.3d 385, 393 (8th Cir. 2007)(*en banc*)(discussing need for "clarity of municipal obligation" in determining viability of a failure to train theory). It does not matter even if the arrest itself is illegal. Plaintiff's argument regarding the use of handcuffs is entirely meritless, if not frivolous.

4

The use of force on an arrestee whose arrest is unlawful is not *per se* excessive force.  See *Habiger v. City of Fargo*, 80 F.3d 289, 298 & n. 8 (8th Cir. 1996)(per White, J.).  Certainly handcuffing, without significant injury, is not excessive force as a matter of law, regardless of the legality of the arrest.   Even if plaintiff's arrest was unlawful, he alleges that only defendant Thacker painfully "zip-tied" him, and defendant Walsh tightened the "zip cuffs" further.  ECF 108-1, ¶¶160, 164.  Such *de minimis* use of force is hardly a constitutional violation; nor would any defendant be plainly incompetent to take the routine precaution of handcuffing an arrestee in a chaotic situation.  Cf. *Waters v. Madson*, 921 F.3d 725 (8th Cir. 2019)(discussing use of handcuffs as a means to protect officer, among other things).  Further, other than defendants Thacker and Walsh, no other defendant is alleged to have been aware of plaintiff's pain or in a position to intervene.

Plaintiff recognizes the weakness of his municipal liability argument when he attempts to conflate allegations about the mass arrest with a vague, generic "custom of unconstitutional arrest." ECF 108-1, p. 24.  However, the allegations of the third amended complaint are wholly insufficient to give rise to municipal liability premised on any such "custom."  Plaintiff's complaint, ECF 100-1 at ¶203, is bereft of allegations showing any "custom" of macing in connection with arrests that was a "moving force" in his arrest or alleged mistreatment.  He alleges only boilerplate, conclusory claims that the City police customarily use excessive force.  E.g., ECF 100-1, ¶¶203.

## Conclusion

For the foregoing reasons, and the reasons set for in the previous memorandum, the third amended complaint should be dismissed with prejudice (or without prejudice as to count XI).

Respectfully submitted,<br>
MATT MOAK

5

ACTING CITY COUNSELOR
/s/ Robert H. Dierker 23671(MO)
dierkerr@stlouis-mo.gov
Brandon Laird 65564(MO)
Abby Duncan 67766(MO)
Associate City Counselors
Adriano Martinez 69214(MO)
Catherine A. Dierker 70025(MO)
Assistant City Counselors
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS